And for the appellate, Mr. Johnson, and for the affilee, Mr. Heigl. You may proceed. May it please the court. Good morning, Justices. This appeal revolves around, well, first of all, Brian Johnson for the appellate, Justices. This appeal revolves around two basic legal principles, the first of which non-competition clauses are disfavored and closely scrutinized, and ambiguities are construed against the drafting party. The facts of this case, briefly, Jeremy Rakers was employed by American Pest Control starting in November of 2005. Mr. Rakers was primarily a residential pest control serviceman and oversaw accounts. American Pest Control drafted and had Mr. Rakers sign an employment contract. In that contract contained a non-compete clause, and at the heart of this appeal, the non-compete clause started with the words, on the termination, quote, for any cause. And it's that language, for any cause, that we believe is ambiguous and should be construed against the drafting party, American Pest Control. Mr. Rakers resigned from his employment in September of 2011 and started a competing company. Thereafter, American Pest Control sought and received an injunction against Mr. Rakers, effectively putting him out of business, and we filed, we for Mr. Rakers filed a motion to reconsider the injunction based upon the language, for any cause, and the fact that a resignation is not a for-cause termination. Therefore, the non-compete does not even apply. The trial court denied that motion to reconsider, and this interlocutory appeal ensued. As I stated, Mr. Rakers is currently prohibited from working in this chosen profession in the pest control industry, all because of a non-compete agreement, which we believe is ambiguous. The review in this appellate court standard review is de novo, based upon the construction or interpretation of the written contract. Surprisingly, aside from the general law that non-competes are disfavored, and also ambiguities are construed against the drafting party, surprisingly there is little case law in this state which addresses the phrase for any cause. How about the phrase for any cause whatsoever? Again, there's a few cases which I believe counsel for each side has found those cases. This Bishop case you cited, it ruled in your favor on the phrase for any cause, but then they said if the contract had made it clear that it was for any cause whatsoever, the ruling would be different. That's what we have here, isn't it? Well, it's the same language. However, I believe that the language is still ambiguous. What the Bishop case stands for, of course, is a good case. In that case, a veterinarian was terminated, and in that employment contract used the phrase for any cause. The appellate court specifically said in that case, the language, quote, for any cause contained in the employment contract is susceptible to more than one meaning. As such, it should be construed against the drafting party and the employee's interpretation must prevail. Now, the language or the word whatsoever included after for any cause, I believe the appellate court said still that that's ambiguous and that it could mean for any cause whatsoever or it could mean you have to have cause or it could mean for no cause, which is exactly the situation which we have here. In the employment realm, when you use the word cause, that's a legal buzzword. That actually, as the Bishop case pointed out, that actually means you have to have some reason for termination. It can't just be a resignation or without cause termination. Reading the Bishop case, it says, in examining the language of the competition clause, for any cause, could be construed to mean for any cause whatsoever, including no specific cause, as was argued by the employer. So again, that's exactly the language we have here, for any cause whatsoever. This doesn't say that it has to be for some specific cause. Well, that's where the ambiguity really comes out, and I think we're addressing it here. What is ambiguous about whatsoever? That's pretty all-encompassing. Right, but it means that you have to have some cause. See, the typical employment contract is... How about termination for any cause whatsoever? That's the language. There are all sorts of reasons you can be terminated. You can do it voluntarily. There can be no reason. Why isn't that the key consideration? Well, the language termination is really not at issue in this appeal. If someone resigns, their employment is terminated. So I'm not sure where... If that's what my argument came out to mean in the beginning, that a termination doesn't include resignation, that's just not the case. But what I'm getting at here is when you use the language for any cause, even for any cause whatsoever... What sense does that make? The whole idea of a non-competition clause is the employer doesn't want the employee to develop a lot of skills in his employment, and then resign and go out and use those against the employer. The question is not cause. If the employee resigns for any reason whatsoever, there's a problem with the non-competition clause. You just used the word reason. The typical non-compete clause drafted these days and would have been used in this one, or should have been used, is the language if the employee terminates for any reason or no reason. That's the typical language in a lot of employment, non-compete clauses. What's the difference between the language you just proffered and whatsoever? Well, back it up. See, whatsoever means that you have to have cause. You have to have some cause whatsoever. You have to have a cause in order for the non-competition clause. Why isn't the employee's option a cause? Because in the Bishop case they said cause has to be some substantial shortcoming recognized by law and public opinion as a good reason for termination. The language for any cause whatsoever, we believe, and I think it's coming out here, that there is an ambiguity in this. Because my interpretation of this is certainly different from yours. And I imagine maybe between all three of you. When reading this, it seems to me that you have to have some sort of cause. Some cause whatsoever in order to have this non-compete be effective. I think that's in the very language of this non-compete agreement. If, however, they use the language for any reason or no reason, that's a different story. That's the common language in non-competes these days. And I believe that's what the Bishop court was getting at. Was that if you're going to use the language for any cause, you have to have some cause. That would permit anyone who signs this agreement to just walk away without even giving notice. And say orally, I resign. But say it as they're walking toward the parking lot and start a new business tomorrow. So if you're construing, or if you're interpreting ambiguity, even arguably if there's a degree of ambiguity here, doesn't the inference of the purpose of the restrictive covenant so heavily favor the drafter, even though the original ambiguity might be held against them, that there is, if not substantial likelihood of success on the merits, a reasonable likelihood of success on the merits? If a fact finder looks at this, and a trial judge looks at this, what is the purpose of using this language? Well, this is an at-will agreement. Employees in Illinois are at-will. But I'm going to give you triple protection. You can only be fired for cause. Otherwise, you can go out and compete against me tomorrow. It completely defeats the purpose of the non-compete agreement. And I'm saying, okay, let's agree that there's a degree of ambiguity. Even though the Bishop case, which you cite, I think you can strongly argue that whatsoever means we don't care what the reason is. It could be that if you're a female, you're pregnant. That might violate other laws. Well, it would. It'd violate other laws. But within the context of just looking at the contract, that's okay. You'd have to bring in other laws to get that remedy. We don't have that here. What employment situation in Illinois are you aware of where there has to be cause for firing or for severing the relationship with an employee where there isn't a employment contract regarding severance or the policy handbook and those sorts of arguments that get brought up? Right. Well, we may look at this case because I don't believe in the employment contract in this case, having not looked at it specifically for your issue, obviously. But I don't think they use an employment contract. It's an at-will employment. It's a term contract. I think it was for a year and then renewable one year or annually every year after that. But it's not an at-will employment contract. I understand you haven't looked at it for this purpose. Forget the non-compete. Can I discharge you? That wasn't my reading of that employment contract. I think you actually do have to have, because they don't specifically state you're an at-will employee, because part of the problem with employment contracts is it could change the at-will status. And that's where we run into these issues in employment contracts. But specifically including that language, you're still an at-will employee at the very beginning of an employment contract, the old letters with the initial next to it, would usually preserve the at-will relationship. But in this case, I'm not sure in that employment contract it actually had that at-will language. I think it was you're signing this for a term of a year. Therefore, if you want to have it terminated, it's got to be for cause or by resignation by the employee. Or it can be without cause by mutual agreement of the parties. Contract says, shall automatically be renewable from year to year thereafter, except that the employment of the representative may be terminated by either party at any time thereafter by giving the other party written notice. So you have an option to get out of it, but not necessarily at any time. You have to give a notice. Well, but that's pretty close to at-will. All that means is you're going to pay him for an extra two weeks or 30 days or whatever. All the more reason why, if it is an at-will contract, it's all the more reason why that non-compete is... I mean, the typical language you would use in a non-compete these days is for any reason or no reason. Then you don't get into this entire issue right here, which is exactly what... Because again, when you use that word cause, that word cause means something. And whether the word whatsoever is after it. Whatsoever, in my mind, means you still have to have cause, but it has to be some cause whatsoever. But you still have to have any cause. What it doesn't mean, at least the way I interpret it, is it doesn't mean you can terminate someone for no cause and have it still apply, because by the very language... We're talking about the employer terminating the employee here. We're talking about the employee terminating his employment. Right. And I think if an employee, the way this contract is drafted, I think reasonable minds, assuming my mind is reasonable, could come to the conclusion that in a resignation situation, that non-compete clause may not be valid because of the language used by American Pest Control. The paragraph before the non-compete paragraph says, said parties come to then agree that the company has made over a period of years in this territory numerous contacts, either culminating in accounts or prospective accounts of said business, and that said accounts and goodwill in said territory belong exclusively to the company. And representative agrees to recognize the property rights of the company. And then the next paragraph is the non-compete clause. So again, what sense does it make to read this contract to say the employee can quit and begin competing the next day? Well, I think those two paragraphs actually are read together. The first paragraph means you can't go out and start, it's not technically a non-solicit agreement, but it's kind of along the same lines. All those contacts you've made over those years, and all those contracts, those belong to the employer. And then if you're going to go out and compete, you have to have, if you're terminated for a cause, any cause, some cause, you can't directly go out and take those contracts that were made. But you can certainly go out and start a competing company. So you're not allowed to compete with existing customers, but you are allowed to compete with the public in general. Oh, with the pool of potential customers out there that are currently customers of the employer. That's the way I read those two. I mean, they're kind of separate. I don't think they're meant to be read together. So if I come to you smiling and say, I'm going to start my own pest control business because I can do it better than you, and I say, well, you son of a bitch, you're fired. I can't compete. But if I come and smile and say, this is the greatest job ever, and surreptitiously steal away, fold my tents and steal away in the night and start a new business by giving, I put a post-it note on your desk that says, ha ha, you didn't know it, but I was always ready to start a competing business. I resign. In one case, a non-compete applies, and in the other case it doesn't. I would argue that that is certainly given this arrangement. If that's the case, do you think the public policy regarding construing an ambiguity against the drafter is strong enough to counterbalance the policy of the theory of law is, what is the purpose of the contract? What is the purpose of the non-compete agreement? So that you would be faced with, if you're in front of a trial judge, saying, yeah, it's ambiguous, but this, in the context of the whole contract, in the context of the industry, in the context of the consequences that are going to flow from it, I'm construing it in favor of American pest control, or I'm so likely to that it's okay for me to give a preliminary injunction. Well, once an ambiguity is, just like in the Bishop case, once an ambiguity is raised, then it's construed against the drafter. I agree, but if you have a hearing, couldn't the judge say, it's ambiguous, but I still have to figure out what it meant? Because of this degree of ambiguity, it is thrown out, and you say, there's no non-compete agreement, because people can't agree on what whatsoever means. That's exactly what the Bishop case did. They found an ambiguity did exist, and then they used the word inapplicable. That the non-compete, therefore, is inapplicable. And I think that that's good policy. I mean, if you're going to draft a contract and make all these poor residential service guys sign this thing so that you're binding them to a non-compete or trying to, you better make sure, as the drafter of that contract, that contract says what it encompasses everything you want it to say. And if it doesn't, and there's an ambiguity in there, too bad for the drafter. Let me ask you about this sentence in Bishop. A non-competition clause would be enforceable if the employee terminates the employment relationship. Or, cause exists for the employer to terminate the employment relationship. That's an interesting line. However, that's exactly what opposing counsel raised in their response. But the words in that are A, non-competition agreement would be effective if the employee terminates. That's the general law in Illinois as it stands right now. That if an employee is terminated without cause, well, that employment agreement may actually still be applicable. But what Bishop was doing there was addressing a third argument that was raised. And that argument was that a non-competition clause is unenforceable as a matter of law when the employee is fired without cause. Well, that's not the law in Illinois. But that was the third and final argument that they were trying to raise and Bishop Court addressed it. But it wasn't applicable in Bishop because of the ambiguity that existed in that contract. Thank you. You'll have additional time in the middle. Good morning. Jeremy Heifel for American Pest Control. I think all three of you have hit on the one word that if I had to leave you with one concept at the end of the day here, that would be context, context, context, context. First of all, this is not Bishop because of context. Second, this language has past scrutiny because of context that I can show you in the other cases we've cited. And third, context within the four corners of the document itself suggests that this is the right outcome here as well. First of all, this is not Bishop. I'm fond of saying that you can't simply extract a phrase or a word or something out of either a court decision or out of a contract or out of any other piece of literature where you're trying to understand what it means. Just pull it out of context and in a vacuum try to understand what it means. Counsel here is focusing on this word cause, but it's outside of context. We really need to look at the context of Bishop to understand how they even got to the point of an ambiguity because they were not looking at ambiguity in the generic as far as cause was concerned. They were looking at a specific paragraph within the Bishop party's contract and they cite to it and verbatim quote it in the decision. And it is paragraph seven of the contract that the parties had in the Bishop case. They looked at paragraph seven which enumerated four or five specific events they termed them in their contract. Four or five specific events that would have added up to at fault reasons for termination. And so basically the Bishop court looked at the Bishop contract and found one set of circumstances where the contractual language would allow the parties to terminate the relationship without having to do anything but simply do a time piece to cause it to end. Sort of like a no fault divorce. Versus on the other side within the paragraph seven you have this explicit event language that spelled out four or five specific triggering events that were more or less fault based reasons, again if we use the divorce scenario, that would trigger the end of the parties relationship. And so the court said because we have this word cause in there we don't know if the word cause is talking about the no fault provisions, might be, or talking about the five enumerated events, might be, or talking about all of those we don't know. Because we can't tell if we're going to construe it against the drafter in that circumstance. Well that was the Bishop contract. That's the context you have to keep in mind here. We don't have that context here within these parties contract, American Pest Control and Mr. Rakers. We don't have anything enumerating four or five specific events that would basically be at fault reasons for terminating the parties relationship. So we don't have Bishop here. Bishop does not apply here. Bishop does not say universally that cause is somehow going to always be ambiguous. That's point one. We're not Bishop. Let me ask you about Mr. Johnson's last argument there. Under this contract, could the employer fire the employee without, for no reason at all, and then insist that the non-competition clause applied? Could they fire them without stating any reason at all? Basically issue a termination? Yeah. Yes. If you look at the contract, basically it sets forth a one year term posted. One year time period where once we've terminated, I'll say we're not continuing the relationship and walk away just as you were suggesting. They can just walk away from it. And under that circumstance, there would not be any reason to have to provide why we're ending it other than just saying we have a no fault divorce scenario. We're beyond the one year time period. I'm giving you the notice. We're done. Terminated. It's not a fault based termination. It's just a time's up. We're not going to continue it any longer. In what sense does that make? The employer fires the employee, and then the employer says, I don't want you competing with me. So firing or termination, either circumstance, fault or at fault, the result is the same. When the employment relationship is ended, we have a two year, 25 mile radius restriction against competition. It doesn't matter what the front end was that led up to it. You can imagine some horrible situations. The employer finds this guy who's a really good worker, knows that the guy would be a real serious threat if he were out in competition. So the employer hires him, keeps him on for a week, and then he fires him and says, oh, by the way, the contract says you can't compete for two years. So if we were going with our existing contract here, he would still be owed compensation for the duration of that one year. He wouldn't be able to use the services beyond the two week time period. So he'd be able to enforce his compensation for the duration of the one year time period that they were contractually obligated to each other. And then yes, two years would be enforced that he couldn't be in the two year, 25 mile radius competing against them. Now he could do the same business outside that radius, no problem. And he could do other things besides pest control inside that radius, but the restriction against competition would still apply, and he would have collected 50 weeks out of 52 without having to work for it. That's the way I see it. So even in that horrible situation I've given you, the employer gets away with it. And the employee gets 50 weeks of compensation for not having to lift a finger and do anything. You know, it's a tradeoff. He gets paid. Well, you keep the employee for a year and a day, and then you dump him. That could happen, and it would still result in a two year, 25 mile radius. And even though that's a horrible result and it doesn't make any sense, that's what the contract says, and so we're stuck with it. Well, horrible I guess is a subjective thing. We have parties here who have knowingly and willingly contractually obligated themselves to certain duties. I'm not talking about this situation. I'm giving you a hypothetical. And it seems to me the hypothetical is a really disturbing situation. And your answer is, no, that's what the contract says. We're stuck. There is no question that we can postulate various hypotheticals where we can find a boundary out there somewhere and say we're not going to enforce this as against public policy, but that's not this case. This case is squarely within the reasons of why we should enforce it, and to get to that I'd go to my second point. This language we're dealing with here has already passed judicial scrutiny on numerous occasions. I've cited to two first district cases, one of which happens to be a pest control case, the Smithereen and Renfro case that has the exact same language. And I've also cited to a first district case by the name of Morrison Metal Process Corporation in Valence that involves some sort of a railroad rail welding business. But in both of those cases we have the exact language we're dealing with here in American Pest Control and Rakers. And in neither case's analysis was it ever even hinted at that there was any degree of ambiguity here or any need for a fault-based circumstance. These were exactly the back pattern we've got here. Parties have contracted, parties have worked together for a period of time, employee resigns, not discharged for cause or anything else. Employee resigns and now goes out and sets up a competing business. And that language passed scrutiny in both of those cases. Besides those two cases, I've also cited to a couple of fourth district precedent that Mr. Justice Cook, you yourself were involved with these cases, although Mr. Justice Steigman was the one who had actually authored the decisions. Harwellack and Marine Bank, and then Bloomington Urological and Scaglia. Fourth district upheld these sorts of provisions in those two cases. And then the most recent pronouncement on the law in this area is this reliable fire equipment company decision out of the Illinois Supreme Court that was handed down in late December, literally like a day or two before we went to hearing for the preliminary injunction in this case. And just last week was the petition for re-hearing was denied. So that case is now solid law. In that particular case from the Supreme Court, one of the two employees had resigned, just what we've got here, and still there was no qualm against enforcing the non-competition provision. So this language has passed judicial scrutiny. It seems to me when the employee resigns, that's an even stronger reason to enforce the non-competition clause. Either way, they've contractually obligated themselves, but you're right. When an employee walks away on his own initiative to set up a competing business, yes, it hints that he's sort of been scheming and conniving and getting ready to take a look at business with him. He didn't just one day flip the switch, but there was a lead time of getting prepared and soliciting customers and getting the business going and all of that. Third point I'd make, though, and again focusing on context, context, context. If we get inside the four corners of this document, the language here, if we were to take counsel's interpretation over cause and what not, that we have to have an at-fault based reason in order for termination to be invoked and for this non-compete to be enforced, then we get some bizarre results if we force the other occurrences of termination in the contract to have to be triggered under that same circumstance. For instance, in the very last paragraph before the wherefore part where everybody signs, the very last paragraph of the party's contract indicates that on termination two things are going to happen here and it doesn't say that anything had to cause that termination, just on termination. The employee has to return all their equipment, products, inventory, etc. that's in their possession and secondarily, the employer has to pay the employee all funds that are due and owing. So if we're going to take Mr. Johnson's interpretation and skew this business that we have to have fault-based cause, then jam that into that paragraph and now because we don't have fault-based cause, we have a voluntary resignation by the employee. That means that the employee doesn't have to return their equipment or chemicals or supplies, etc. and the employer is liberated from having to make the final payment and that's completely nonsensical. So we just can't rip this language out of context. We have to keep it in context of the document itself. So for all those reasons, this is not Bishop. This language has passed judicial scrutiny before and it is internally consistent with how the contract reads with termination in other places. I would ask this court to enforce the party's agreement to put them right back where they contractually obligated each other and affirm the trial court's preliminary injunction. Thank you. Thank you. Rebuttal. The first district cases cited include language. The language is the same, however. In neither of those cases was this specific issue addressed. As a matter of fact, they were before the Bishop case. So if Bishop wanted to say, well, this language has already been construed, we'll look at these first district cases, they could have done that, but they did not. Mainly because in those two first district cases, this issue was never raised. Those two first district cases, one of them is from, I believe, the 1940s, addresses the public policy behind a legitimate business interest test, which is not the issue here. And that was the same issue, by the way, in the Reliable Fire case, which is not an issue here. We're not arguing legitimate business interest. We're arguing ambiguity in the contract. So in that regard, counsel's right. We can't just pull language out of a case and say, well, that language applies here, because we have to look at the context of the entire case. The Bishop case, number two, did cite those four-to-five forecaused events. But that court, the Bishop court, did go on and say that the conclusion that they reached was simply, quote, reinforced by the language contained in that paragraph, the forecaused termination. They had already come to their conclusion by the time they looked at the other provisions of the contract, and they said, quite frankly, the language for any cause is susceptible to more than one meaning. This decision here, which should happen, I'm not a justice, so I can't tell you what should happen. Well, sure you can. That's what you do in oral argument. Basically here, what we have is a non-compete where I believe everybody in this courtroom could look at it and actually say, this is susceptible to more than one meaning. So we have a case out of the fourth district that is actually directly, I'm sorry, out of the second district, which is actually directly on point here. This court should interpret the language as in the Bishop case, apply it here, and find that an ambiguity exists, that the non-compete is inapplicable as a matter of law, that the language which is ambiguous should be construed against the drafting party because these non-competes are disfavored. Perfect case in point is here. We have a gentleman who is basically prohibited from practicing in the area that he is well known in. So is Dr. Skaglia. Well, same, but in that case, the ambiguity... Well, let's back up. What we have here is an ambiguity written into this contract by the drafting party. Now they're trying to enforce it against an individual who does resign, but frankly, you raised a good point. So you could have a person resign here, and if they resign, well, they're probably not going to get unemployment, and they're still going to have this non-compete against them. But if they're terminated, then, let's say they're terminated without cause, well, then the non-compete doesn't apply, but then they get unemployment. So the employer here is having their cake and eating it, too, really. Doesn't it make a difference that the employee in Bishop was fired, and this employee, in our case, quit? I don't think that makes a difference because the employee in Bishop was terminated without cause by the employer, and the Bishop court went on to define what cause is, and a termination without cause is similar to a resignation. It is? I would argue it is. In this case, your client could have prevented all this by keeping his job, by not resigning. True, but then you're forcing someone to work kind of against their will, but you spend a third of your life at work, it ought to be something you enjoy. Thank you. Thank you.